HENDON, J.
Mark Wallace ("Mark"), in anticipation of filing a petition to determine incapacity of his father, Milton Wallace ("Milton"), pursuant to sections 744.3201 and 744.331, Florida Statutes (2018), informed the probate judge of his plan to attach certain medical records from his father's personal physician, Dr. Ranjan Duara, along with the expert written opinions of three physicians specializing in the fields of neurology, psychiatry, and radiology, who did not examine Milton and rendered their opinions solely based on their review of Milton's medical records. For the reasons that follow, we conclude that the trial judge properly entered an order that (1) enjoins Mark from attaching to, or referencing in, a petition to determine incapacity the medical records of his father, Milton, and the written expert opinions rendered by the three physicians; and (2) enjoins the parties, other than Milton, and the parties' counsels and/or representatives from having ex parte communications with the examining committee that the trial court will appoint following the filing of a petition to determine incapacity.
I. Facts and Procedural History
Following the death of Milton's wife, Comprehensive Personal Care Services, Inc. ("CPCS") initiated a trust proceeding against, among others, Milton and Mark, relating to an irrevocable trust executed in 2011 by Milton and his wife.[1] Mark filed an answer, a cross-claim, and a third-party complaint, alleging, among other things, that the third-party defendant has misled and fraudulently induced Milton, who is in his eighties, into transferring funds and assets earmarked for the irrevocable trust to the third-party defendant.
In the trust proceeding, Mark issued a subpoena for deposition duces tecum to Milton's physician, Dr. Ranjan Duara of the Mount Sinai Hospital Wien Center for Alzheimer's Disease and Memory Disorders, and a subpoena duces tecum to Dr. Duara's records custodian, seeking production of Milton's medical records. Milton objected to the subpoenas and moved for a protective order and to quash the subpoenas duces tecum.
Following a hearing, the trial court found that Mark had placed Milton's mental state at issue based on the claim of undue influence. After conducting an in camera review of Milton's medical records, the trial court entered a protective order on February 5, 2018, that provides that Milton's medical records shall be received only by certain attorneys of record in the trust proceeding; no other attorney can receive Milton's medical records without leave of court; the attorneys can share the *784 records with their expert witnesses qualified in neurological diseases on the condition that the experts comply with the terms of the protective order; Milton's medical records cannot be used for any other purpose except in connection with the trust proceeding; there can be no further production or dissemination of Milton's medical records without leave of court; and the parties cannot file Milton's medical records with the court without leave of court. Thereafter, in a second protective order, the trial court ordered the production of other medical records, including Milton's MRIs, subject to the same restrictions set forth in the protective order entered on February 5, 2018.
Following the entry of the protective orders, Mark's counsel hired three physicians-neurologist, psychiatrist, and radiologist-to review Milton's medical records that were the subject of the protective orders and to render their opinions. Without examining Milton, the physicians submitted to Mark's counsel written reports with their various medical opinions ("medical reports").
Based on these medical reports, Mark decided that he would seek a determination that his father is incapacitated under Chapter 744 of the Florida Statutes, and to support his petition to determine incapacity, he would submit his father's medical records and the medical reports. However, as the protective orders placed restrictions on the dissemination and/or filing of Milton's medical records, Mark did not file the petition to determine incapacity, and instead sought leave of court to submit Milton's medical records and the medical reports upon the filing of a petition to determine incapacity ("motion for leave of court").[2] Milton objected to the motion for leave of court and filed a countermotion seeking the entry of an order prohibiting ex parte communications with members of the examining committee, when appointed.
At the conclusion of the hearing on the motions, the trial court entered an order denying Mark's motion for leave of court and granting Milton's countermotion prohibiting ex parte communications. The order provides that, with the exception of Milton, the parties cannot utilize or disseminate Milton's confidential medical records as set forth in the protective order entered on February 5, 2018. Further, if a petition is filed against Milton, his confidential medical records cannot be attached to, incorporated in, or referenced in the petition. Finally, the trial court ruled that, with the exception of Milton, the parties and their counsels and/or representatives cannot communicate with any member of the examining committee, when appointed. Mark's non-final appeal followed.
II. Issues
The issues before this Court are whether the trial court erred by ruling that (1) if a petition to determine incapacity is filed in a separate proceeding under Chapter 744 of the Florida Statutes, the petitioner cannot attach, incorporate, or reference Milton's confidential medical records and/or the medical reports in the petition, and (2) the parties, other than Milton, and the parties' counsels and/or representatives cannot have ex parte communications with the members of the examining committee appointed by the trial court. As we find no error, we affirm the order under review.
*785 III. Analysis
A. Milton's medical records and the medical reports
Mark contends that the trial court erred by ruling that Milton's medical records and the medical reports cannot be attached to, incorporated in, or referenced in a petition to determine incapacity. In support of this argument, Mark suggests the members of the examining committee will not have a complete picture of Milton's alleged dementia prior to filing their written reports. We disagree.
The Florida Legislature has set forth the mechanism that must be followed in a Chapter 744 proceeding to determine that a person is incapacitated. Section 744.3201 sets forth the requirements for the filing of a petition to determine incapacity, and section 744.331 addresses the procedures that must be followed once a petition to determine incapacity is filed.
Section 744.3201 provides in its entirety as follows:
Petition to determine incapacity.-
(1) A petition to determine incapacity of a person may be executed by an adult person.
(2) The petition must be verified and must:
(a) State the name, age, and present address of the petitioner and his or her relationship to the alleged incapacitated person;
(b) State the name, age, county of residence, and present address of the alleged incapacitated person;
(c) Specify the primary language spoken by the alleged incapacitated person, if known;
(d) Allege that the petitioner believes the alleged incapacitated person to be incapacitated and specify the factual information on which such belief is based and the names and addresses of all persons known to the petitioner who have knowledge of such facts through personal observations;
(e) State the name and address of the alleged incapacitated person's attending or family physician, if known;
(f) State which rights enumerated in s. 744.3215 the alleged incapacitated person is incapable of exercising, to the best of petitioner's knowledge. If the petitioner has insufficient experience to make such judgments, the petition must so state; and
(g) State the names, relationships, and addresses of the next of kin of the alleged incapacitated person, so far as are known, specifying the dates of birth of any who are minors.
(3) A copy of any petition for appointment of guardian or emergency temporary guardian, if applicable, shall be filed with the petition to determine incapacity.
§ 744.3201 (emphasis in subsections (d) and (e) added).
To comply with section 744.3201, the person filing the petition to determine incapacity is not required to attach, incorporate, or reference the alleged incapacitated person's ("AIP") medical records or medical reports prepared in anticipation of the filing of a petition to determine incapacity. Under section 744.3201(2)(d), Mark will be required to state in the petition to determine incapacity, if filed, that he believes that his father (Milton) is incapacitated, specify the factual basis for this belief, and provide the names of persons known to Mark who have knowledge of these facts through personal observation. Based on assertions made by Mark that appear in the record before this Court, Mark has knowledge of his father's alleged frontotemporal dementia because, as *786 claimed by Mark, his parents executed the irrevocable trust in 2011 following Dr. Duara's diagnosis in 2010 that Milton allegedly suffers from dementia. Further, Mark claims that his parents instructed their attorney to involve Mark in all aspects of their estate planning. Thus, Mark will be able to state in the petition to determine incapacity that he believes that his father suffers from frontotemporal dementia. In addition, under section 744.3201(2)(e), Mark will also be required to set forth in the petition the name and address of Milton's attending or family physician, if known. As such, Mark will be able to state in the petition to determine incapacity that Milton's physician is Dr. Duara of the Wien Center for Alzheimer's Disease and Memory Disorders at Mount Sinai Medical Center. Based on the information that Mark can provide in the petition to determine incapacity, if filed, the three-member examining committee will be apprised of Milton's alleged frontotemporal dementia and the name of Milton's physician, Dr. Duara, who will be able to shed light on Mark's assertion that Milton suffers from frontotemporal dementia.
If a petition to determine incapacity is indeed filed by Mark or another person, the procedures set forth in section 744.331 control. Within five days of the filing of a petition to determine incapacity, the trial court must appoint a three-member committee to examine the AIP, see § 744.331(3)(a), and "[e]ach member of the examining committee must file his or her report with the clerk of the court within 15 days after appointment." § 744.331(3)(e).[3]
The procedures set forth in section 744.331 also require that at least one member of the examining committee "must have knowledge of the type of incapacity alleged in the petition." § 744.331(3)(a). Section 744.331(3)(a) also provides that "[i]f the attending or family physician is available for consultation, the committee must consult with the physician." In addition, the written report of each member of the examining committee must include his or her "assessment of information provided by the attending or family physician, if any." § 744.331(3)(g) 3. Further, section 744.331(3)(e) provides that each member of the examining committee "must have access to, and may consider," previous examinations of the AIP.[4] § 744.331(3)(e).
Based on these procedures, at least one member of the examining committee will have knowledge of frontotemporal dementia ; each member of the examining committee will be required to consult with Dr. Duara, if available, and the reports of the examining committee members will include an assessment of any information provided by Dr. Duara; and the members of the examining committee shall have access to Milton's prior examinations. Thus, based on the procedures set forth in section 744.331, contrary to Mark's concern, each member of the examining committee should have a complete picture of Milton's *787 alleged dementia prior to filing his or her written report.
At this point, there is no reason to believe that Dr. Duara will not provide relevant information to the members of the examining committee. Further, although Milton's counsel has vigorously challenged the release of Milton's medical records in this trust proceeding, if Mark or another person does file a petition to determine incapacity, we are confident that the straightforward procedures set forth in section 744.331 will be followed without delay by all parties. Despite the expedited nature of a proceeding to determine incapacity, if it appears that a party is unnecessarily delaying the matter, the issue can be raised on an emergency basis before the trial court addressing the petition to determine incapacity. Thus, based on the above analysis, we affirm the portion of the order under review that provides that, if a petition to determine incapacity is filed in a separate proceeding under Chapter 744, the petitioner cannot attach, incorporate, or reference Milton's confidential medical records and/or the medical reports in the petition.
If the legislature intended that the person filing a petition to determine incapacity must be permitted to incorporate into the petition the AIP's medical records and the written reports issued by physicians who did not examine the AIP and were hired by the petitioner, the legislature could have easily incorporated these provisions into the controlling statutes, sections 744.3201 and 744.331. The legislature, however, chose not to. It is not the function of this Court to expand the controlling statutes by concluding that the petitioner must be permitted to attach these documents to the petition to determine incapacity.
B. Ex parte communications with the examining committee
In ruling that the parties, other than Milton, and the parties' counsels and/or representatives cannot have ex parte communications with the members of the examining committee, when appointed, the trial court was most likely concerned with the effect that the ex parte communications would have on the members of the examining committee. Thus, we find no error in imposing such a limitation.
IV. Conclusion
Based on the above analysis, we affirm the non-final order under review.[5]
Affirmed.
LOGUE, J., concurs.

CPCS initiated the trust proceeding as the guardian of the person and property of Milton and his wife's other son.

It is this Court's understanding that Mark has not yet filed a petition to determine incapacity.

In Sarfaty v. M.S., 232 So. 3d 1074, 1079 (Fla. 3d DCA 2017), this Court stated:
We have identified no Florida case holding that the timing set forth in [section 744.331(3)(e) ] cannot be waived by an AIP or the AIP's private counsel. Nor have we identified a case holding that the timing set forth in the statute is so significant to the process and parties that a petition must be dismissed, without leave to amend, if the time requirements are not strictly fulfilled. (footnote omitted).

The medical reports issued by the physicians hired by Mark's counsel cannot be furnished under section 744.331(3)(e), which provides that "each examining committee member must have access to, and may consider, previous examinations of the person," because these physicians did not examine Milton.

In our decision in this matter, we are upholding the trial court's order essentially clarifying, at the request of the petitioner, its February 5, 2018 protective order in the ongoing trust proceeding. We read this order as allowing the guardianship judge to readdress the matters in the order if and when the petitioner files a guardianship proceeding, as the trial court stated at the hearing.